USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___08/16/2019___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JORGE ALBERTO MARTINEZ JR.,

                                     Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.
-------------------------------------------------------------X

**OPINION & ORDER**

18-CV-01570 (KHP)

**KATHARINE H. PARKER, United States Magistrate Judge**.

      Plaintiff Jorge Alberto Martinez Jr. ("Plaintiff"), who is represented by counsel, commenced this action against Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff seeks review of the Commissioner's post-remand decision that he was not disabled under sections 216(i) and 223(d) of the Act from the alleged onset date ("AOD") and date last insured of December 31, 2008 through January 14, 2012.

      Plaintiff moved, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, for judgment on the pleadings requesting either reversal of the administrative law judge's ("ALJ") second decision dated May 3, 2019, or, in the alternative, remand of the case (ECF No. 10 ("Plaintiff's motion")). The Commissioner cross-moved for judgment on the pleadings (ECF No. 13 ("Commissioner's motion")).

      For the reasons set forth below, the Commissioner's motion is DENIED, and Plaintiff's motion is GRANTED in part. The Commissioner's decision denying Plaintiff's claim for social security disability benefits during the relevant period of December 31, 2008 through January

14, 2012 (the "relevant period") is remanded pursuant to sentence four of 42 U.S.C. § 405(g)

for the sole purpose of obtaining vocational expert ("VE") testimony regarding whether there

were a significant number of jobs existing in the national economy which Plaintiff could have

performed *during the relevant period*, given his already-established age, background, and

residual functional capacity ("RFC") during that period.

## BACKGROUND

I.    ***Summary of Claim and Procedural History***

Plaintiff is 57 years old and lives with his mother in the Bronx.  (ECF No. 1 ("Compl.") ¶

2; ECF No. 9, Social Security Administrative Record ("Tr."), 1027.)  He completed tenth grade

and worked in construction, maintenance, truck driving, and supervising commercial activity

until around 2005.  (Tr. 273.)  Plaintiff initially stopped working because of diabetes and related

ailments, such as a series of infections.  (*Id.* at 59-60; *see, e.g.*, *id.* at 586.)  Since then, Plaintiff

has remained unemployed due to various ailments, including left shoulder and left knee pain.

(*Id.* at 59-60, 66-67.)  Plaintiff testified that on a typical day, he has no energy, feels depressed,

and has trouble sleeping.  (*Id.* at 81, 85.)  He claimed that he can leave his home for at most

two hours a day, can only tolerate sitting for up to a couple of hours before his pain in his left

knee forces him to lie down, and that he can walk up to three blocks using his cane.  (*Id.* at 66-

67, 82-85.)  Plaintiff testified that he had lived with his wife and children, but she left him due

to his ailments and inability to work, and that their children now live with her in Florida.  (*Id.* at

78-79.)  He subsequently moved in with his parents.  (*Id.* at 80.)

Plaintiff alleges disability due to high blood pressure, hepatitis with possible cirrhosis of

the liver, diabetes mellitus, status post arthroscopic repair of the left shoulder rotator cuff,

suspected arthritis of the left knee, depressive disorder, panic disorder, and anxiety disorder. (ECF No. 1.)  On June 24, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits.  (Tr. 34.)  Plaintiff also protectively filed a Title XVI application for supplemental security income.  (*Id.*)  These claims were denied on October 14, 2010. (*Id.*; *id.* at 151.)  On November 9, 2010, Plaintiff submitted a request for a hearing.  (*Id.* at 34.)  Plaintiff appeared at a hearing on August 19, 2011 and at a subsequent supplemental hearing on February 21, 2012, both before ALJ Seth Grossman.  (*Id.*)  Plaintiff was represented by counsel at both hearings.  (*Id.*)  Plaintiff initially alleged disability beginning January 1, 2005, but Plaintiff's counsel later amended that date to December 31, 2008 at the supplemental hearing. (*Id.*)

### A.  The Commissioner's Initial Decision

In his initial decision dated March 2, 2012 (the "initial decision"), the ALJ issued a partially favorable decision concluding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act from the AOD of December 31, 2008 through January 14, 2012.  (Tr. 47-49.) The ALJ instead determined that Plaintiff has been disabled under section 1614(a)(3)(A) of the Act beginning on January 15, 2012 through the date of that decision by directly applying of Medical-Vocational Rule 201.09.  (*Id.*)  On March 22, 2012, and April 24, 2012, Plaintiff submitted requests for the Appeals Council to review the ALJ's decision finding Plaintiff disabled beginning January 14, 2012, arguing that Plaintiff was disabled since December 2008. (*Id. at* 1142; *see id.* at 1140.)  The Appeals Council denied Plaintiff's request to review the ALJ's initial decision on August 7, 2013.  (*Id.* at 1087.)  On September 17, 2013, Plaintiff requested that the Appeals Council reopen the case and review the ALJ's decisions to attribute more

weight to the testimony of some physicians and to discount the testimony of others. (*See id.* at 1148-1156.) Plaintiff sought reversal or remand for further proceedings before a different ALJ based on these alleged "errors of law and fact" and the ALJ's failure to "objectively and impartially review this case." (*Id.* at 1150.) On October 31, 2013, the Appeals Council denied Plaintiff's request to reopen and change the ALJ's initial decision. (*Id.* at 1091.)

In his initial decision, the ALJ followed the five-step sequential process contemplated under 20 C.F.R. § 404.1520 (a)(4)(i)-(v) in evaluating Plaintiff's claim. (*Id.* at 37-49.) At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2008 and that Plaintiff had not engaged in substantial gainful activity since the AOD of December 31, 2008. (*Id.* at 37.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus, high blood pressure, hepatitis with possible cirrhosis of the liver, status-post arthroscopic repair of the left shoulder rotator cuff, suspected arthritis of the left knee, depressive disorder, and panic/anxiety disorder. (*Id.*) In reaching these conclusions, the ALJ drew on the following evidence in the record: Plaintiff's diagnosis of liver disease, past hospitalizations due to diabetes-related complications, Dr. David Gonzalez's orthopedic examination of Plaintiff's shoulder, Plaintiff's shoulder surgery, Dr. Gonzalez's suspicion about left knee arthritis, and Dr. Parvesh Sharma's evaluation of Plaintiff's mental health. (*Id.*)

At step three, the ALJ found that Plaintiff's impairments, individually and collectively, failed to meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id.*) The ALJ considered Listings 1.02 (Major dysfunction of a joint), 4.00 (Cardiovascular system), 5.05 (Chronic liver disease), and 9.00

(Endocrine disorders), in connection with Plaintiff's physical impairments. (*Id.* at 37-38.) The ALJ concluded that Plaintiff's left knee condition did not satisfy Listing 1.02A because he did not exhibit "an inability to ambulate effectively." (*Id.* at 37.) Plaintiff's left shoulder condition did not satisfy Listing 1.02B because "he only has an impairment in one upper extremity, rather than in both." (*Id.*) The ALJ found that Plaintiff's high blood pressure had not resulted in any of the complications in Listing 5.05. (*Id.*) Finally, Plaintiff's diabetes had not resulted in "repeated episodes of diabetic ketoacidosis, chronic hyperglycemia, or hypoglycemia, as required by Listing 9.00." (*Id.*)

The ALJ evaluated Plaintiff's mental impairments under the criteria of Listings 12.04 (Affective disorders) and 12.06 (Anxiety-related disorders). (*Id.* at 38.) The ALJ found that Plaintiff had the following limitations: "mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration." (*Id.*) The ALJ found that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria for Listings 12.04 or 12.06 because they did not "cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration." (*Id.* at 39.) He further found that Plaintiff's mental impairments failed to satisfy the "paragraph C" criteria for both Listings. (*Id.*) The ALJ noted that Plaintiff had not produced evidence that he experienced "repeated episodes of decompensation" or "a complete inability to function independently outside the area of his own home" among other "paragraph C" criteria. (*Id.*)

At step four, the ALJ assessed Plaintiff's RFC—the maximal amount of work Plaintiff is able to perform despite his limitations. 20 C.F.R. § 416.945(a)(1). The ALJ determined that,

between the AOD of December 31, 2008 and January 15, 2012, Plaintiff had "the residual functional capacity to perform nearly the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 39.) However, the ALJ found that Plaintiff could not "perform any overhead reaching with his left upper extremity, and is limited to the performance of simple, repetitive tasks." (*Id.*) In light of Plaintiff's RFC, the ALJ determined that, since the AOD of December 31, 2008, Plaintiff was unable to perform his past relevant work in the areas of construction, maintenance, and truck driving. (*Id.* at 47).

At step five, the ALJ considered Plaintiff's age, education, and RFC, which included both exertional and nonexertional limitations, to determine whether there were jobs existing in significant numbers in the national economy which Plaintiff could have performed. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ noted that Plaintiff's age category changed on January 15, 2012 from that of a "younger person" to that of a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). (Tr. 48.) The ALJ subsequently applied Medical-Vocational Rule 201.09 to conclude that Plaintiff was disabled beginning on January 15, 2012, the date that Plaintiff's age category changed. (*Id.* at 49.)

However, the ALJ found that Plaintiff's RFC, age, and educational background prior to January 15, 2012 did not warrant a finding of "disabled," because Plaintiff had the capacity to adjust to other work during that period. (*Id.* at 48.) While Plaintiff's ability to perform the full range of sedentary work was restricted by two nonexertional limitations, including limited use of his left arm and certain mental limitations, the ALJ concluded that these limitations had "little or no effect on the occupational base of unskilled sedentary work." (*Id.*) The ALJ explained that Plaintiff's restriction on lifting his non-dominant left arm above shoulder level

"would not significantly affect sedentary work" because Plaintiff "retains good use of his hands and fingers even in that extremity." (*Id.*)  Further, the ALJ found that Plaintiff's "restriction to simple and repetitive tasks would not significantly erode the sedentary occupational base," as he "still preserves the essential functions of competitive, remunerative unskilled work activity." (*Id.*)  The ALJ accordingly concluded that Plaintiff was disabled beginning January 15, 2012, and not disabled before that date.  (*Id.* at 49.)

### B. Appeal to this District and Remand

Plaintiff appealed the Commissioner's initial decision to the Southern District of New York.  In an Opinion and Order dated July 2, 2015, the Honorable Katherine P. Failla found that substantial evidence supported all of the ALJ's findings in his initial decision except his step-five determination that Plaintiff's two nonexertional limitations (including limited use of his left arm and mental limitations), did not significantly erode the occupational base of sedentary unskilled work which Plaintiff could have performed prior to January 15, 2012.  (*Id.* at 1130, 1134; *accord id.* at 48; *see Martinez v. Colvin,* No. 13 CIV. 7254 KPF, 2015 WL 4041988 (S.D.N.Y. July 2, 2015).)  Judge Failla found that the ALJ improperly relied on the Medical-Vocational Rules to make his step-five determination, despite Plaintiff's established nonexertional limitations.  (*Id.* at 1133-1135; *see Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012).)  Judge Failla accordingly remanded pursuant to sentence four of 42 U.S.C. § 405(g), "for the sole purpose of obtaining the testimony of a vocational expert on the question of whether a significant number of jobs existed in the national economy that Plaintiff could have performed prior to January 15, 2012." (Tr. 1135.)  On October 29, 2015, the Appeals Council vacated the ALJ's initial decision "with respect to the period prior to January 15, 2012" and remanded the case to back to ALJ

Grossman. (*Id.* at 1138.) The Appeals Council directed the ALJ to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision on the issue of disability prior to January 15, 2012." (*Id.*)

Notably, in her July 2, 2015 Opinion and Order, Judge Failla found that the ALJ "applied the correct legal standard by employing the five-step evaluation mandated under the regulations." (*Id.* at 1123.) Judge Failla further found that there was substantial evidence supporting the ALJ's findings at steps one through four of the inquiry, including his decisions to discount the opinions of Drs. Gonzalez, Corvalan, and Sharma, to minimize the concerns raised by Dr. Joshi and to give greater weight to the opinions of Dr. Goldman. (*Id.* at 1123-1129.)

However, at step five of the inquiry mandated under the regulations, Judge Failla determined that the ALJ erred in relying primarily on the vocational guidelines to make his findings and declining to obtain VE testimony elucidating the effect of Plaintiff's two nonexertional limitations on the occupational base of unskilled sedentary work. (*Id.* at 1129-1133*; see Prince v. Colvin*, No. 13 Civ. 7666 (TPG), 2015 WL 1408411, at *21-22 (S.D.N.Y. Mar. 27, 2015) (remanding for consideration of VE testimony where the ALJ improperly relied on the guidelines and failed adequately to explain the basis of their conclusions as to the occupational base); *see also* SSR 85-15 (explaining that the impact of nonexertional limitations on the erosion of the occupational base "may range from very little to very much, depending on the nature and extent of the impairment(s). In many cases, a decisionmaker will need to consult a vocational resource.").) While courts in this Circuit have accepted an ALJ's reliance on the vocational guidelines where moderate mental nonexertional limitations had a limited impact on the sedentary unskilled occupational base, physical nonexertional limitations may have

more of an effect.  *Compare Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's findings that moderate mental limitations did not significantly impact the occupational base) *with Faust v. Astrue*, No. 06 Civ. 4577 (KMK)(LMS), 2011 WL 7145740, at *13-14 (S.D.N.Y. Mar. 15, 2011) (noting that a significant limitation in the use of an upper extremity may require vocational expert testimony to determine its impact on claimant's occupational base).

Judge Failla found that the ALJ improperly relied on SSR 83-12 to conclude that Plaintiff's left shoulder limitations would not significantly affect sedentary work.  (Tr. 1133 *referring to id.* at 48.)  Regarding Plaintiff's mental limitations, Judge Failla similarly found that the ALJ improperly relied on SSR 85-15 in determining that Plaintiff's restriction to "simple and repetitive tasks" would not significantly erode the sedentary unskilled base.  (*Id.*)  Further, Judge Failla noted that the court in *Faust v. Astrue* deemed SSR 83-12 and SSR 85-15 to be "'a framework for adjudicating claims in which an individual has *only* exertional limitations.'"  (*Id.* at 1134 (quoting *Faust*, 2011 WL 7145740, at *12).)  Judge Failla was therefore unsatisfied with the ALJ's treatment of Plaintiff's two nonexertional limitations.  (*See id.* at 1129-1134.) Judge Failla remanded the case back to the Commissioner "for the sole purpose of obtaining the testimony of a vocational expert on the question of whether a significant number of jobs existed in the national economy that Plaintiff could have performed *prior to January 15, 2012*." (*Id.* at 1135 (emphasis added).)

### C.  The Commissioner's Second Decision

Pursuant to the remand order, the ALJ held additional hearings on August 22, 2016 and February 27, 2017.  (*Id.* at 915; *see id.* at 1023-39, 1040-61.)  Plaintiff appeared and was represented by counsel at both hearings.  (*Id.* at 915, 1023, 1040.)  Christina Boardman, a VE,

provided testimony at the second hearing.  (*Id.* at 915, 1051-61.)  The ALJ issued an unfavorable

decision on May 3, 2017 (the "second decision"), finding that Plaintiff was not disabled under

sections 216(i) and 223(d) of the Act prior to January 15, 2012.  (*Id.* at 919-920.)  Plaintiff

submitted written objections to the ALJ's findings and conclusions to the Appeals Council on

June 5, 2017.  (*Id.* at 1247.)  On December 26, 2017, the Appeals Council denied Plaintiff's

request for review, finding no reason to assume jurisdiction because the ALJ's decision

complied with the orders of the district court, the Appeals Council, and relevant authorities.

(*Id.* at 903.)  Thus, the Appeals Council rendered the ALJ's second decision the final decision of

the Commissioner.

    In his second decision, the ALJ reiterated his findings from his initial decision as to steps

one through three of the five-step inquiry.  (*Id.* at 917-918.)  At step four of the inquiry, the ALJ

reached the same conclusion as to Plaintiff's RFC as he had in his initial decision, though he also

considered additional medical testimony that Plaintiff provided from Drs. Gonzalez and Howard

Tedoff to reach this result.  Based on this evidence, Plaintiff's symptoms, and "the intensity,

persistence, and limiting effects of Plaintiff's symptoms," the ALJ concluded that, during the

period of December 31, 2008 through January 14, 2012, Plaintiff had the RFC to perform

"sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except that he could not

perform any overhead reaching with his left upper extremity, and he was limited to the

performance of simple, repetitive tasks."  (*Id.* at 918.)  This finding is identical to the RFC

determination that the ALJ made in his initial decision.  (*Compare id*. at 917-18 *with id.* at 39.)

The ALJ also reiterated that Plaintiff did not retain the requisite RFC to perform any past

relevant work in construction, maintenance, truck driving, or supervising commercial activity. (*Id.* at 918.)

At step five of the inquiry, the ALJ addressed Plaintiff's age, education, and RFC to determine whether Plaintiff could have adjusted to other work during the relevant period prior to January 15, 2012. (*Id.* at 919.) Because Plaintiff's ability to perform the full range of sedentary work was impeded by two nonexertional limitations, the ALJ asked the VE whether there were jobs existing in the national economy "for an individual with the claimant's age, education, work experience, and residual functional capacity." (*Id.*) Specifically, the ALJ posed two hypothetical questions to the VE. (*Id.* at 1054-1060.)

In the first hypothetical, the ALJ asked about the existence of jobs for a person who is "limited to the full range of sedentary work. . . in addition to that, the claimant cannot do any overhead reaching; the person is limited to a simple task instruction job with at most occasional contact with supervisors, co-workers and the public; and no exposure to concentrated pollutants or chemicals." (*Id.* at 1054.) The VE testified that the following jobs existed in the following numbers in the national economy, for a person with this background: table worker (Dictionary of Occupational Titles ("DOT"), 739.687-182, about 3,000); assembler (DOT 734.687-018, about 2,700); addresser (DOT 209.587-010, about 8,000); lens inserter (DOT 713.687-026, about 1,190); and title stuffer (DOT 731.685-014, about 5,000). (*Id.* at 1054-1055.)

In the second hypothetical, the ALJ asked about the availability of jobs for "[a] hypothetical person of the claimant's education, [and] vocational background who is limited to the full range of sedentary work, no overhead reaching and simple task instruction job." (*Id.* at

1055.)  The ALJ stated that the first hypothetical would have further restricted Plaintiff's RFC by adding the limitations as to occasional contact with supervisors, coworkers, and the public, and no concentrated exposure to pollutants or chemicals.  (*Id.* at 919; 1056.)  In response to this less restrictive hypothetical, the VE testified that the five jobs previously described would be suitable for such a person, and added the following jobs, which exist in the following numbers in the national economy:  charge account clerk (DOT 205.367-014, about 31,000); order clerk (209.576-014, about 17,000).  (*Id.* at 1056-1057.)  The ALJ also inquired how often the claimant could be off task and still do the job satisfactorily, to which she replied, up to 15% and that he could be absent one time per month.  (*Id.* at 1057.)  The ALJ did not ask about a specific time period in either hypothetical, leaving open the question as to whether there were a significant number of jobs in the national economy at the time of the hearing or at a previous point.

The ALJ noted that he verified that the VE's testimony was consistent with the information contained within the DOT, pursuant to SSR 00-4p.  (*Id.* at 919.)  Based on the VE's testimony, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a "successful adjustment to other work that exists in significant numbers in the national economy" during the period beginning December 31, 2008 through January 14, 2012.  (*Id.* at 920.)

Finally, the ALJ reaffirmed his prior finding that Plaintiff became disabled beginning January 15, 2012, and further found that Plaintiff remained disabled as of May 3, 2017, the date of the ALJ's second decision.  (*Id.*)

### D.  The Instant Appeal

Plaintiff appealed the ALJ's second decision by commencing this action on February 21, 2018. (ECF No. 1.) In this appeal, Plaintiff challenges the ALJ's second decision as unsupported by substantial evidence and contrary to the law. (ECF No. 11, Plaintiff's Brief ("Pl. Br.") at 2.) First, Plaintiff argues that the VE's testimony, together with Dr. Tedoff's medical opinion, should have led the ALJ to find that Plaintiff was disabled from December 31, 2008 through January 14, 2012. (*Id.* at 17.) Second, Plaintiff asserts that the ALJ failed to properly apply the "substantial evidence" standard in reaching his conclusions. (*Id.*) Plaintiff therefore requests that the case be reversed or remanded. (*Id.* at 2.)

## DISCUSSION

I. *The Applicable Law*

A. *Judicial Standard of Review of the Commissioner's Decision on Remand*

The court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *see Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Estrella*, 925 F.3d at 95. So long as they are supported by substantial evidence in the administrative record, the findings of the ALJ after a hearing as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). This standard of review also applies to final decisions denying disability benefits issued by the Commissioner following remand of an initial decision. *Sullivan v. Finkelstein*, 496 U.S. 617, 618 (1990) (interpreting the

term "a civil action" in sentence one of 42 U.S.C. § 405(g) to mean that each final decision of

the Secretary of Health and Human Services is "reviewable by a separate piece of litigation.").

An ALJ's failure to apply the correct legal standard constitutes reversible error if that

failure might have affected the disposition of the case.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d

Cir. 2008).  This applies to an ALJ's failure to follow an applicable statutory provision,

regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id.* at 265 (discussing failure to follow

regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (discussing failure to follow

SSR).  In such a case, the court may remand the matter to the Commissioner under sentence

four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and

fair record to explain his or her reasoning.  *See, e.g.*, *Donnelly v. Colvin,* No. 13-CV-7244 AJN

RLE, 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015) (citing *Crysler v. Astrue*, 563 F. Supp. 2d

418, 429 (N.D.N.Y 2008)); *Rivera ex rel. S.M.H. v. Colvin,* 9 F. Supp. 3d 309, 316 (S.D.N.Y. 2014).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the

court must "conduct a plenary review of the administrative record to determine if there is

substantial evidence, considering the record as a whole, to support the Commissioner's

decision."  *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*)

(quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Under the substantial evidence

standard, a reviewing court may reject those facts "only if a reasonable factfinder would have

to conclude otherwise."  *Brault*, 683 F.3d at 448 (emphasis omitted) (quoting *Warren v. Shalala*,

29 F.3d 1287, 1290 (8th Cir. 1994)).

To be supported by substantial evidence, the ALJ's decision must be based on

consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. §§

423(d)(5)(B), 1382a(3)(H)(i).  The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (holding that reconsideration of improperly excluded treating physician evidence typically requires remand).  If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand.  42 U.S.C. § 405(g).

### B.  *Scope of Review on Limited Remand*

The scope of review on remand is narrowed to issues not explicitly or implicitly decided in prior proceedings, by application of the "law of the case" doctrine.  *See Carrillo v. Heckler*, 599 F. Supp. 1164 (S.D.N.Y. 1984) (citing *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir.1981) (applying the law of the case doctrine to a Social Security appeal), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 (1982)); *Calderon v. Astrue*, 683 F. Supp. 2d 273, 276 (E.D.N.Y. 2010).  The doctrine, "while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey,* 529 F.3d 478, 490 (2d Cir.2008) (internal quotation marks omitted) (quoting *United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir.2000)).  In *Carrillo v. Heckler* , a court in this District applied the law of the case doctrine to hold that a court's judgment on an ALJ's step-five determination constituted an implicit affirmation of the ALJ's determinations at all prior steps.  599 F. Supp. at 1169.  The district court's explicit and implicit affirmations of the ALJ's original findings therefore establish the "law of the case," provided that there are no "cogent" and "compelling" reasons to revisit them.  *Ali*, 529 F.3d at 490; *see Carrillo*, 599 F. Supp. at 1168;

### C. Legal Principles Applicable to the Commissioner's Disability Determination

Under the Act, every insured individual considered to have a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits, the Commissioner is required to conduct the following five-step inquiry:

(1) First, determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).

(2) Second, if not gainfully engaged in any activity, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to do basic work activities. Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii).

(3) Third, if the claimant has a "severe impairment," determine whether the impairment is one of those listed in Appendix 1 of the regulations – if it is, the Commissioner will presume the claimant to be disabled and the claimant will be eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). At this stage, the Commissioner also must determine the claimant's residual functional capacity ("RFC"); that is, her ability to perform physical and mental work activities on a sustained basis despite her impairments.[1] 20 C.F.R. § 404.1520(e).

(4) Fourth, if the claimant does not meet the criteria for being presumed disabled, the Commissioner next must determine whether the claimant possesses the RFC to perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv).

(5) Fifth, if the claimant is not capable of performing work she performed in the past, the Commissioner must determine whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520; *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden at the first four steps of the Commissioner's analysis.

*See, e.g.*, *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However, at the last step, the

Commissioner has the burden of showing that "there is other gainful work in the national

economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

"The ALJ ordinarily meets this burden by utilizing the applicable medical vocational guidelines,

although sole reliance on the guidelines may be inappropriate where the claimant's exertional

impairments are compounded by nonexertional impairments." *Roma*, 468 F. App'x at 20.

---

[1] A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ's assessment of a claimant's RFC must be based on all relevant medical and other evidence, including objective medical evidence, such as x-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities. *See, e.g., Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## II.    *Analysis*

### A.  *The ALJ's Application of Legal Principles*

Before addressing whether the ALJ's decision is supported by substantial evidence, the Court must first address whether the ALJ made any legal errors.

Plaintiff generally challenges the ALJ's second decision as contrary to the law.  (Pl. Br. at 17.)  Specifically, Plaintiff argues that the ALJ improperly discounted Dr. Tedoff's conclusion that Plaintiff could not perform regular full-time work and improperly weighed the VE's testimony on the amount of time that a person could be off-task and still satisfactorily perform the jobs identified.  (*Id.*)  The Court gleans these specific arguments from Plaintiff's contention that the ALJ should have found Plaintiff disabled during the period beginning December 31, 2008 through January 14, 2012 based on Dr. Tedoff's opinions and the VE's testimony.  (*Id.*)

The Court first addresses two interrelated errors which the ALJ made at step five of the inquiry mandated under the regulations and then addresses Plaintiff's challenges to the ALJ's conclusions.  As an initial matter, the Court finds that ALJ failed to comply with Judge Failla's remand order.  (*See* Tr. 1096.)  Additionally, the ALJ failed to develop the record regarding the existence of a significant number of jobs which Plaintiff could have performed during the relevant period.  Accordingly, the Court remands pursuant to sentence four of 42 U.S.C. § 405(g) to cure the deficiencies in the record regarding the existence of a significant number of jobs in the economy that Plaintiff could have performed during the relevant period of December 31, 2008 through January 14, 2012.  While Plaintiff did not raise either of these issues during his cross-examination of the VE or in his argument about the ALJ's legal errors,

the Court finds that these issues are not waived because the Commissioner has the burden of proof at step five of the mandated inquiry. *Balsamo*, 142 F.3d at 80.

### 1. Failure to Comply with the Court's Remand Order

When a remand order specifically states the purpose for remand, "it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation." *Carrillo*, 599 F. Supp. at 1168 (internal quotation marks omitted) (quoting *Mefford v. Gardner*, 383 F.2d 748 at 758 (6th Cir. 1967)). The Commissioner and the ALJ therefore had a duty to comply with the district court's instructions on remand. Judge Failla's remand order specifically directed the Commissioner, and thus, the ALJ, to obtain "the testimony of a vocational expert on the question of whether a significant number of jobs existed in the national economy that Plaintiff could have performed *prior to January 15, 2012*." (Tr. 1135 (emphasis added).) The Court finds that the ALJ failed to specify the relevant period when he questioned the VE about alternate jobs existing in the economy that would have been suitable for Plaintiff. While the VE gave estimated figures for each job identified for a person with Plaintiff's RFC, age, and background, the record is silent on the time period for which those figures were calculated. (*See id.* at 1051-1060.) The Court thus finds that the ALJ's failure to ask the VE about the specific time period constitutes a failure to comply with the Judge Failla's remand order on appeal.

### 2. Failure to Develop the Record

In Social Security proceedings, the ALJ must affirmatively develop the record on behalf of all claimants. *See Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009). The ALJ has an obligation to develop the record even where the claimant has legal counsel. *Perez v. Chater*, 77

F.3d 41, 47 (2d Cir. 1996).  To do this, the ALJ must investigate the facts and develop the

arguments both for and against granting benefits.  (*Id.*)  Whether the ALJ has fulfilled this duty

is a threshold question.  Accordingly, before deciding whether the Commissioner's final

decision is supported by substantial evidence pursuant to 42 U.S.C. § 405(g), "the court must

first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's

regulations and also fully and completely developed the administrative record."  *Intonato v.

Colvin*, No. 13 CIV. 3426 JLC, 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (*quoting Scott v.

Astrue*, No. 09-cv-3999 (KAM)(RLM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010)).  Remand

is appropriate when the ALJ fails to discharge this duty.  *See, e.g., Moran*, 569 F.3d at 114–15

("We vacate not because the ALJ's decision was not supported by substantial evidence but

because the ALJ should have developed a more comprehensive record before making his

decision.").

In light of the above, the Court finds that the ALJ failed to discharge his duty to develop

the record when he neglected to identify the relevant time period in the hypotheticals he

posed to the VE.  (Tr. 1051-1060.)  Given that the remand order specifically instructed the ALJ

to obtain VE testimony on the existence of jobs for someone with Plaintiff's RFC during the

relevant period, this error constitutes a failure to develop the record.  (*See id.* at 1135.)

The Court does note that the ALJ attempted to comply with Judge Failla's remand order

by obtaining the testimony of a VE at the February 27, 2017 hearing.  (*Id.* at 1051-1061.)  The

ALJ's hypotheticals to Ms. Broadman properly asked about the existence of jobs which would

have been suitable for someone with Plaintiff's established age, vocational background, and

RFC during the relevant period.  (*See id.* at 1054-1055.)  However, this does not mitigate the

possibly harmful effect which the ALJ's omission of the time period might have had on the VE testimony, and thus, on the disposition of the case.  The Court deems the VE testimony to be deficient because it does not address the time period specified by Judge Failla.  *See Rosa v. Colvin*, No. 3:12-CV-0170 LEK/TWD, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2013) (remanding because the VE's testimony as to the number of jobs available to plaintiff was unclear, and therefore did not constitute substantial evidence); *Johnston v. Barnhart*, 378 F. Supp.2d 274, 283 (W.D.N.Y.2005) (finding that the ALJ erred where the VE's testimony concerning numbers of jobs available pertained to an overly broad category of jobs, which included positions that plaintiff could not perform).  Accordingly, the Court remands for the sole purpose of determining whether there were a significant number of jobs in the national economy which Plaintiff could have performed during the relevant time period.  (*Accord* Tr. 1135.)

### B.  *Substantial Evidence Supporting the ALJ's Decision*

In reviewing the ALJ's decision, this Court does not re-weigh the evidence.  *Jones v. Sullivan*, 949 F.2d 57 (2d Cir. 1991).  A court may not substitute its own judgment for that of the ALJ).  Even if this Court might have reached a different decision, this Court cannot disturb the Commissioner's decision if it is supported by substantial evidence.  (*Id.*) Thus, even if substantial evidence also supports a finding of disability, so long as substantial evidence supports the ALJ's decision, this Court must defer to the agency.  *See, e.g.*, *Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997).  Here, Plaintiff argues that the ALJ improperly discounted Dr. Tedoff's conclusion that Plaintiff could not perform regular full-time work and improperly weighed the VE's testimony as to the amount of time that a person could

be off-task and still satisfactorily perform the jobs identified. (Pl. Br. 17-18.) But the question on appeal from a denial of benefits is whether there is substantial evidence in the record supporting the ALJ's conclusion, not whether there is any contrary evidence in the record. *See Tejada*, 167 F.3d at 773. The case law is clear on the issue of conflicting evidence in the record: the existence of some evidence inconsistent with the ALJ's conclusions is not sufficient grounds for a Court to disturb the Commissioner's decision. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (finding that the ALJ is within his discretion to resolve conflicts in evidence); *Tejada*, 167 F.3d at 773; *Jones*, 949 F.2d at 57. The Court therefore finds Plaintiff's arguments to be unpersuasive.

However, the ALJ may rely on a VE's testimony regarding a hypothetical only when "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and it accurately reflects the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (alteration in original) (internal quotation marks and citations omitted). Due to the deficiency in the VE's testimony as to the relevant time period, the Court cannot determine whether the ALJ's decision at step five is supported by substantial evidence on this point where the Commissioner bears the burden. Remand is therefore necessary to remedy the deficiencies in the record.

Accordingly, this Court finds that the ALJ's omission of the relevant time period during his questioning of the VE constitutes both a failure to comply with Judge Failla's remand order and a failure to develop the record at step five of the mandated inquiry. These errors caused the VE's testimony to be insufficient to support the ALJ's step-five determination that Plaintiff was not disabled during the relevant period. The Commissioner's second decision denying

Plaintiff's claim for social security disability benefits during the relevant period of December 31, 2008 through January 14, 2012, is therefore remanded pursuant to sentence four of 42 U.S.C. § 405(g), for the sole purpose of obtaining VE testimony on the question of whether there were a significant number of jobs existing in the national economy which Plaintiff could have performed *during the relevant time period*, given his already-established age, background, and RFC during that period. Such testimony may be obtained in any appropriate form, including written interrogatories. *See* Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual (HALLEX) §§ I-2-5-56–59 (Aug. 29, 2014) (noting that VE testimony may be obtained after hearing via written interrogatories; describing how to obtain VE testimony through interrogatories); *Blash v. Berryhill*, 379 F. Supp. 3d 288, 296 (S.D.N.Y. 2019) (holding that the ALJ properly relied on a VE's written responses to interrogatories submitted to the VE after the hearing); *Lynn v. Comm'r of Soc. Sec.*, No. 11-CV-917 CBA, 2013 WL 1334030, at *9, *15 (E.D.N.Y. Mar. 30, 2013) (affirming a denial of benefits where the ALJ relied on post-hearing VE testimony obtained via interrogatories at step five of the inquiry).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is DENIED, Plaintiff's motion is GRANTED in part, and the case is REMANDED for further proceedings as stated above pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should obtain VE testimony on the question of whether there were a significant number of jobs existing in the national economy which Plaintiff could have performed during the relevant time period.

**SO ORDERED.**

Dated: August 16, 2019
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge